# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ADMIRAL INSURANCE CO.,** | : | |
| **on its own behalf and as assignee of Girard** | : | |
| **Estate Fee and Girard Estate Leasehold** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | **No. 18-2492** |
| | : | |
| **LIBERTY MUTUAL FIRE INSURANCE** | : | |
| **CO. AND LIBERTY INSURANCE** | : | |
| **CORP.,** | : | |
| | : | |
| *Defendants.* | : | |

## MEMORANDUM

### I.     INTRODUCTION

Plaintiff Admiral Insurance Company ("Admiral") seeks declaratory

judgment against Liberty Mutual Fire Insurance Company, et al. ("Liberty") in

order to establish that Liberty owes an obligation under an insurance agreement to

provide umbrella coverage up to $5,000,000 to Girard Estate, rather than only the

$1,000,000 it paid pursuant to the umbrella policy. ECF No. 1. Admiral's position

is that Liberty has waived or is estopped from "relying on an endorsement in its

umbrella policy to reduce the limits of that policy from $5,000,000 to $1,000,000

for Girard Estate" because of Liberty's actions during the defense of a personal

injury suit against Girard Estate. ECF No. 46-5 at 4. Defendant Liberty's position

is that it covered Girard Estate under a primary policy of $1 million and met that

1

obligation as well as meeting its obligation under the umbrella by paying $1 million under it for a total of $2 million. ECF No. 44-4. Girard Estate, as an additional insured under the umbrella policy, is subject to the Additional Insured Limitation endorsement of $1,000,000. *Id.* Admiral agrees that the policy language would normally limit Liberty's exposure to $1,000,000 but claims Liberty's actions in this case serve as a waiver and estoppel to assert the policy language and therefore Liberty is liable to pay up to the full-face amount of the policy of $5 million. ECF No. 46-5. Liberty argues that the waiver and estoppel claims must fail as a matter of law. ECF No. 44-4 at 5-7.

Currently before the Court is Defendants' Motion for Summary Judgment (ECF No. 44), Plaintiff's Response (ECF No. 46), Defendants' Reply (ECF No. 47), and Plaintiff's Sur-Reply (ECF No. 49).

## II. BACKGROUND

The underlying personal injury suit at issue involved an individual, Timothy May, who alleged he was severely injured while working at a property owned by Girard Estate in his capacity as an employee of Farrelly Building Services, Inc. ("Farrelly"). ECF No 44-4 at 10.[1] An access door blew shut, striking him, and causing him to fall back and hit his head on a support beam. *Id.* Admiral, as the

---

[1] The following facts are stipulated and undisputed by all parties unless otherwise noted. *See* ECF No. 44-2.

2

primary liability insurer for Girard Estate, was first put on notice of May's insurance claim on October 26, 2015. ECF No. 44-2 at ¶ 2.

At the time of May's claim, Girard Estate was insured by Admiral under a commercial liability insurance policy limited to $1,000,000 per occurrence. *Id.* at ¶ 21. Farrelly was insured by Liberty under two separate policies: a primary liability policy through Liberty Mutual Fire Insurance Company with a $1,000,000 per occurrence limitation and an umbrella liability policy through Liberty Insurance Corp. with a $5,000,000 per occurrence limitation. ECF No. 44-4 at 5.

Girard estate was an additional insured under Liberty's primary policy with Farrelly. ECF No. 44-2 at ¶ 19. Girard Estate was also covered under the umbrella policy, which contained an "ADDITIONAL INSURED LIMITATION." ECF No. 44-2 at ¶ 20. This endorsement modifies coverage limits for "an additional insured under 'underlying insurance'" to the amount "required by the contract or agreement to provide for such additional insured." *Id.* The amount required by the Agreement for Engineering Services between Farrelly and Kennedy-Wilson Pennsylvania Management ("KWPMI"), Farrelly, as the contractor, was "in an amount of not less than $2,000,000." *Id.* at ¶ 9. This language, the parties agree, then limits Liberty's available insurance to Girard Estate to $2 million. *See* ECF No. 46-5 at 22.

3

Admiral denied May's claim against Girard Estate by December 30, 2015. *Id.* at ¶ 28. On September 28, 2016, May sued Girard Estate and KWPMI for damages related to his injury. *Id.* at ¶ 1. Admiral assumed defense of the suit and retained the law firm Deasey, Mahoney & Valentini which filed an Answer to the Complaint on behalf of all Defendants. *Id.* at ¶¶ 4-6. Then, on November 22, 2016, counsel for Admiral formally tendered defense of the *May* lawsuit to Farrelly and Liberty. *Id* at ¶ 6. On a November 30, 2016 phone conference, Sandra Baker, a claims specialist at Liberty, indicated to Admiral that Liberty would assume the defense of the *May* lawsuit. *Id.* at ¶ 34.

Carol Sisto ("Sisto"), a claims adjuster for Admiral, testified at her deposition that she was the most knowledgeable person regarding the *May* lawsuit. *Id.* at ¶ 23. After May's claim was filed, Sisto reviewed the Agreement for Engineering Services and also received a Certificate of Insurance prepared and issued by Wells Fargo Insurance Services USA, Inc. ("Wells Fargo"), Farrelly's insurance broker. *Id.* at ¶¶ 24-25. The Certificate of Insurance referenced both the primary and the umbrella policies and their respective limits, as well as the additional insurance limitation endorsement. *Id.* at ¶¶ 17-18. The certificate stated, "[a]ll coverages are subject to policy terms, conditions and exclusions." *Id.* at ¶ 18. Most telling, Sisto did not request to review the policies listed in the Certificate of Insurance. *Id.* at ¶ 25. She candidly testified that "if anyone had

4

reviewed the certificate of insurance and then the form that was explicitly
referenced in the certificate of insurance, they would have known about the limit of
coverage that was being made available to additional insureds." *Id.* at ¶ 26.

Girard Estate believed it was covered as an additional insured under
Farrelly's primary and umbrella policies issued by Liberty with limits of
$1,000,000 and $5,000,000 respectively, rather than just the $2 million total that a
reading of the policies would have demonstrated. ECF No. 46-5 at 6. However,
this belief was only based on a reading of the limits stated on the declaration pages
of those policies. *Id.*

Sisto never discussed how much coverage was available to Girard Estate
under the primary or umbrella policies with Liberty as it related to the *May* lawsuit
until March of 2018. ECF No. 44-2 at ¶ 52. When Admiral tendered the defense
of the suit to Liberty over a year earlier, on November 30, 2016, it believed the
claim would not exceed $1,000,000, and the defense of the lawsuit would be paid
for under Liberty's primary policy. *Id.* at ¶¶ 29-31. Admiral, based on the
assumptions it made without reading the policy and its evaluation of the claim,
closed its file on May's claim, did not follow the development of the suit, and
made an indemnity reserve of $0. *Id.* at ¶ 36.

5

During the *May* lawsuit, Liberty's counsel engaged Dr. Jonas Gopez as a defense medical expert to conduct an independent medical exam of May on September 15, 2017. *Id.* at ¶ 44. Dr. Gopez conceded that May could not return to work as a building engineer's helper. ECF No. 46-5 at 7. He opined, however, that May was still capable of "gainful employment and sedentary duty would be his most appropriate level." *Id.* A day before the independent medical exam was conducted by Dr. Gopez, Liberty filed suit against Dr. Gopez and other physicians in the Philadelphia area for submitting fraudulent claims. *Id.*

On February 2, 2018, a motion for summary judgment was filed on behalf of all defendants in the *May* lawsuit. ECF No. 44-2 at ¶ 45. On February 21, 2018, counsel for Liberty stated in an internal written evaluation of the claim that they could not call Dr. Gopez because of the lawsuit against him and recommended that they try and "get this case to mediation." ECF No. 46-5 at 10; ECF No. 44-2 at ¶ 47. On March 6, 2018, Liberty opened a claim under Farrelly's umbrella policy. *Id.* at ¶ 48. On March 8, 2018, a representative from Liberty advised Sisto that Liberty had $2 million in total coverage available for the *May* lawsuit, and that "a potential excess exposure existed" that would impact Admiral and that Liberty was trying to set up a date for mediation of the claim. ECF No. 44-4 at 17. On the same day, Admiral re-opened its claim file for the *May* lawsuit but did not set an indemnity reserve for the claim. ECF No. 44-2 at ¶ 51. "Although it sent an

6

excess letter, at no time during the underlying May case did Liberty issue a reservation of rights letter to Girard Estate, reserving its rights to claim that the limits on the umbrella Policy are only $1,000,000." ECF No. 46-5 at 10.

Summary judgment in the *May* lawsuit was denied on March 28, 2018. ECF No. 44-2 at ¶ 55. The next day, Sisto informed her manager that May's expert economist "opined a loss of $2.8 million." *Id.* at ¶ 56. Sisto at this point then evaluated the full value of the claim at $3.2 million but did not set an indemnity reserve, which would implicate Admiral's full coverage of $1 million if it were to accept Liberty's claim of a $2 million dollar limit, and this on a claim they originally denied and then reserved at $0. *Id.* at ¶ 57. On April 3, 2018, Liberty provided Sisto with the Liberty Insurance Corp. policy, Additional Insured Limitation endorsement, and six expert reports. *Id.* at ¶ 58. On April 4, 2018, Sisto wrote in her claims diary that Admiral would not set an indemnity reserve until after mediation. *Id.* at ¶ 59.

Sisto did not attend the April 9, 2018 mediation, nor did any other representative from Admiral, based on Sisto's understanding that the value of the claim would still fall within Liberty's combined policy limits even if it were $2,000,000 rather than $5 million. *Id.* at ¶ 61. On April 10, 2018, a Liberty Representative informed Sisto that the meditator indicated that the case could have a value of $3,000,000 and Plaintiffs made a demand of $7,950,000 and $1,500,000

7

for Mr. and Mrs. May's respective claims. *Id.* at ¶ 65. Sisto did not establish a
reserve until May 14, 2018, a necessary step before Admiral could make
indemnification payment. *Id.* at ¶¶ 60, 66.

Liberty's trial counsel issued a Pre-Trial Report to in-house counsel stating
plaintiffs' collective demand, estimating the likely value of this case before a
Philadelphia jury, and informing counsel that they could not call Dr. Gopez to
testify because of his ongoing lawsuit with Liberty. ECF No. 46-5 at 11. The *May*
lawsuit settled for $3.8 million with $2 million paid by Liberty, $1,000,000 paid by
Admiral, and $800,000 paid by a third, non-party insurance company. *Id.* In
Sisto's deposition, she stated she was "not in a position to say one way or the other
whether the [*May* lawsuit] could actually ever have settled for an amount that did
not require Admiral to pay its full policy limit" even if Liberty had handled the
claim "perfectly." ECF No. 44-12 at 56.

## III. STANDARD

Summary judgment "is appropriate where the moving party has established
'that there is no genuine dispute as to any material fact and the movant is entitled
to judgment as a matter of law.'" *Burton v. Teleflex, Inc.*, 707 F.3d 417, 425 (3d
Cir. 2013) (quoting Fed. R. Civ. P. 56(a)). "A fact is material if it might affect the
outcome of the suit under the governing law." *Id.* When reviewing a motion for
summary judgment, the court views "the facts in the light most favorable to the

8

non-moving party and draws all reasonable inferences in that party's favor." *Id.*
Although, "the non-moving party must present more than a mere scintilla of
evidence," and must present evidence on which a jury could reasonably find for
that party. *Id.* (internal quotation and citation omitted). Additionally, "[s]ummary
judgment is appropriate when the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that the moving party is
entitled to a judgment as a matter of law." *Wright v. Corning*, 679 F.3d 101, 105
(3d Cir. 2012) (internal quotation marks and citations omitted).

## IV. DISCUSSION

### A. Admiral's Waiver Claim

First, Admiral argues that, under New York law, Liberty waived its right to
rely upon the endorsement in Farrelly's umbrella policy, reducing the policy limit
for additional insureds from $5,000,000 to $1,000,000. ECF No. 46-5 at 16-18.
Admiral asserts that Liberty manifested an intent to abandon its right to assert its
policy limits during its defense of the *May* lawsuit when it took the following
actions: 1) not notifying Girard Estate that the claim would be over $1,000,000; 2)
not informing Girard Estate that is was covered under Liberty's umbrella policy as
an additional insured with $1,000,000 in coverage, not $5,000,000 and; 3)
"continu[ing] to handle the claim and provide a defense to Girard Estate as though

9

there was no reduction in coverage to Girard Estate under the umbrella policy." *Id.*
Admiral argues that since Liberty did not correct Girard Estate's mistaken belief
that it had $5,000,000 in coverage under Farrelly's umbrella policy, Liberty
conducted itself in a way consistent with relinquishing its contractual right to assert
its policy limits. *Id.*

Liberty responds that Admiral has not identified a single case supporting the
idea that courts should "rewrite the policy so as to remove the policy limit
applicable to additional insureds" because of a waiver. ECF No. 47 at 6. Liberty
contends that courts and leading insurance law commentators across the country
emphatically agree that the law does not require insurers to notify an insured of
applicable policy limits. ECF No 44-4 at 20. Liberty argues it was not required to
alert Girard Estate of the applicable limits during the *May* lawsuit and that its
failure to do so does not constitute a waiver of its express policy limits. *See id.*
Additionally, Liberty states that under New York Law an insured can expand
insurance coverage limitations only with a supplemental contract, not a waiver. *Id.*
at 19.

"Under Pennsylvania law, '[w]aiver is the voluntary and intentional
abandonment or relinquishment of a known right.'" *Gerow v. State Auto Prop. &
Cas. Co.*, 346 F. Supp. 3d 769, 781 (W.D. Pa. 2018). Waiver of a right can be
express or implied. *Id.* Waiver can be implied "by a party's undisputed acts or

10

language so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary." *Id.* (quoting *Samuel J. Marranca Gen. Contracting Co., Inc. v. Amerimar Cherry Hill Assocs., Ltd. P'ship*, 610 A.2d 499, 501 (Pa. Super. 1992)). "Conditions **going to the coverage or scope** of a policy of insurance" **may not be waived by implication** through an insurer's actions or conduct. *Id.* (emphasis added). "[T]he doctrine of waiver does not operate to expand coverage under an insurance policy." *Id.* at 782 (quoting *Pfeiffer v. Grocers Mut. Ins. Co.*, 251 Pa.Super. 1, 379 A.2d 118, 121 (1977). "[I]mplied waiver is not available to bring within the coverage of an insurance policy, risks that are expressly excluded therefrom." *Wasilko v. Home Mut. Cas. Co.*, 232 A.2d 60, 63 (Pa. Super. 1967). "The insured must establish a factual basis to assert the defense of waiver" that demonstrates an intent to voluntarily abandon a contractual right. *Prime Medica Assocs. v. Valley Forge Ins. Co.*, 970 A.2d 1149, 1157 (Pa. Super. 2009).

Similarly, under New York law, a waiver of a contractual right "may be proved by 'undisputed acts or language so inconsistent with [the party's] purpose to stand upon his [or her] rights as to leave no opportunity for a reasonable inference to the contrary.'" *Kamco Supply Corp. v. On the Right Track, LLC,* 149 A.D.3d 275, 281 (N.Y. App. Div. 2017) (quoting *Alsens Am. Portland Cement Works v. Degnon Cont. Co.*, 222 N.Y. 34, 37 (1917)). For an insured to obtain

11

more coverage than it originally bargained for, it must enter into a supplemental contract with the insurer. *Albert J. Schiff Assocs., Inc. v. Flack*, 51 N.Y.2d 692, 698 (1980). "However, this extension of coverage cannot be attained by waiver." *Id.* "Ordinarily, mere '[n]egligence, oversight or thoughtlessness' does not create a waiver." *Id.* at 280. "As the intentional relinquishment of a known right, a waiver should not be lightly presumed." *Id.* (internal quotation marks omitted).

Under Pennsylvania law, Admiral's waiver claim must fail because there is no supplemental contract expanding insurance limits for Girard Estate or removing the additional insureds limitation (i.e., an express waiver). Although Admiral does not explicitly state whether its claim is an express or implied waiver, its argument is based on Liberty's conduct during the defense of the *May* lawsuit and how that conduct showed that Liberty waived a contractual right and expanded coverage to an insured, i.e. an implied waiver, which "does not operate to expand coverage under an insurance policy under Pennsylvania law." *Gerow*, 346 F. Supp. 3d at 781. Under Pennsylvania law, Liberty can rely upon its additional insured endorsement within its umbrella policy regardless of any conduct that may or may not have demonstrated any intentions to abandon this contractual right. *See id.*

Under New York law, Admiral's waiver claim also must fail because a waiver cannot be used to expand coverage beyond what was originally bargained for. *See Flack*, 51 N.Y.2d at 698. Since there was no separate contract amending

12

Liberty's umbrella policy to expand or remove the limits for additional insureds,

Liberty may rely upon the endorsement in its policy.

Furthermore, even assuming that Admiral's waiver claim is not considered

an "expansion of coverage" and is permitted under New York law, the claim still

fails. Liberty's conduct does not show an intention to abandon the right to enforce

its policy limits. Neither party has argued that Liberty concealed its policy limits

or failed to respond to information requests by Admiral. Even if Liberty failed to

keep Admiral informed about the size of the claim during its defense of the *May*

lawsuit, "mere '[n]egligence, oversight or thoughtlessness' does not create a

waiver." *Albert J. Schiff Assocs., Inc. v. Flack*, 51 N.Y.2d at 698. Liberty had no

contractual or lawful duty to inform Girard Estate of its policy limits as an

additional insured. Therefore, under both Pennsylvania and New York law,

Admiral's waiver claim fails.[2]

---

[2] Admiral argues a choice-of law determination is required because an actual conflict exists between the application of New York and Pennsylvania waiver doctrine. Further, Admiral argues New York law should apply because it has a greater interest in the application of its law. ECF No. 46-5 at 13. Liberty contends no choice-of-law determination needs to be made because Admiral fails to point to an actual conflict between the potentially applicable laws. ECF No. 47 at 4. Liberty argues, to the extent a choice-of-law determination must be made, Pennsylvania law must apply because it has "the most interest in the problem." *Id.* "Because this is a diversity case, we apply the choice-of law-rules of the forum state." *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226 (3d Cir. 2007). "According to conflicts of laws principles, where the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict,' and the Court should avoid the choice-of-law question." *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006). Here, an analysis of waiver doctrine under New York and Pennsylvania law produces the same result, so a choice-of-law determination is unnecessary.

13

## B. **Admiral's Estoppel Claim**

Admiral next argues, under either New York or Pennsylvania law, that

Liberty is estopped from asserting its Additional Insured Limitation because Girard

Estate reasonably relied, to its financial detriment, upon an alleged promise by

Liberty that it was insured for $5,000,000 instead of $1,000,000. ECF No. 46-5 at

19. Admiral argues, under both New York and Pennsylvania law, that an insurer is

"estopped from raising a coverage defense if the insured detrimentally relies on the

insurer's promise of coverage." *Id.*

Admiral contends that the $5,000,000 policy limit for insureds on the

declaration page of the umbrella policy constitutes a promise of coverage of

$5,000,000 for Girard Estate. *Id.* at 21. Admiral asserts that reliance on the policy

limit stated on the declaration page of the policy was reasonable "especially in

light of Liberty's failure to advise Girard Estate that the limits were purportedly

reduced to $1,000,000." *Id.* at 23.

Liberty responds that Girard Estate should not have singularly relied on the

declaration page to understand its insurance limits. *Id.* at 22. Admiral claims this

response "defies logic," especially under the specific circumstances of the *May*

lawsuit. *Id.* Admiral declares that the suggestion that Girard Estate should have

investigated and known its coverage limits under the umbrella policy is

14

"irrational," because "[e]veryone knows that it is up to the insurer to clearly explain the amount of coverage available to its insured" instead of "attempt[ing] to put that burden on the insured to make its own coverage determination." *Id.*

Further, Admiral argues Girard Estate's reliance on Liberty's promise was financially detrimental to Girard Estate and the promise prejudiced the defense of the *May* lawsuit. *Id.* at 23. Admiral states that if Liberty had informed Girard Estate of its $1,000,000 limit as an additional insured, instead of having to rely on the promise of $5,000,000 in coverage on the declaration page, Girard Estate would have alerted Admiral and it would have "monitored the case." *Id.* at 26.

Sisto testified at her deposition that, if she were involved in the *May* lawsuit, she would have hired a more credible defense expert than Dr. Gopez because of "her unfamiliarity with him and his lack of acceptable credentials." *Id.* at 27. Admiral argues that Liberty's failure to inform Girard Estate of the increasing value of the claim and, therefore, of Admiral's exposure to May's claim caused Admiral to disengage from the lawsuit. *See id.* Admiral claims if it had been more involved in the case it would have been able to negotiate a better settlement. *See id.* Therefore, Admiral claims Girard Estate's defense of the *May* lawsuit was prejudiced by Liberty to its financial detriment. *See id.*

15

Liberty responds that it did not make any promise, "let alone a 'clear and unambiguous promise.'" ECF No. 47 at 7. Liberty believes Girard Estate, "although unstated," relied upon coverage stated within the Certificate of Insurance of $5,000,000. *Id.* Liberty argues that reliance on a Certificate of Insurance prepared by Farrelly's broker and not the insurer is unreasonable. *Id.* Liberty claims Girard Estate relied on the Certificate of Insurance and ignored the multiple disclaimers within the document stating that the certificate should not be relied upon and that nothing stated within the certificate changes any terms of the policy. *Id.* Further, as a matter of law, Liberty argues that the Certificate of Insurance, which explicitly disclaims conferring any additional rights, cannot be reasonably relied upon. *Id.* However, Admiral "never claimed that we are looking to the Certificate of Insurance for coverage." ECF No. 51 at 20:19-20.

Liberty contends that Admiral has not proven that if it had monitored the *May* lawsuit the results of the litigation would have been different. ECF 44-4 at 24. Liberty claims there is no evidence of tangible economic injury and there is no proof that the results of the lawsuit were prejudiced by Liberty's handling of the defense. *Id.* Liberty supports this claim with the fact that the Admiral representative most knowledgeable of the claim was uncertain that the litigation would have turned out differently. *See id.* Liberty argues that as a matter of law

16

Admiral's promissory estoppel claim must fail under either New York or
Pennsylvania law because none of the elements of the doctrine are fulfilled. *Id.*

Under Pennsylvania law, "promissory estoppel is appropriate where '(1) the
promisor makes a promise that he reasonably expects to induce action or
forbearance by the promisee, (2) the promise does induce action or forbearance by
the promisee, (3) and injustice can only be avoided by enforcing the promise.'" *W.*
*Chester Univ. Found. v. MetLife Ins. Co. of Connecticut*, 259 F. Supp. 3d 211, 222
(E.D. Pa. 2017) (quoting *Carlson v. Arnot–Ogden Mem'l Hosp.*, 918 F.2d 411, 416
(3d Cir. 1990)). Similarly, "in New York, promissory estoppel has three elements:
a clear and unambiguous promise; a reasonable and foreseeable reliance by the
party to whom the promise is made, and an injury sustained by the party asserting
the estoppel by reason of the reliance." *Arcadian Phosphates, Inc. v. Arcadian*
*Corp.*, 884 F.2d 69, 73 (2d Cir.1989) (internal quotations mark omitted).[3]

Under Pennsylvania law, "[i]n the insurance context, 'there must be such
conduct on the part of the insurer as would, if the insurer were not estopped,
operate as a fraud on some party who has taken or neglected to take some action to
his own prejudice in reliance thereon." *Nationwide Prop. & Cas. Ins. Co v.*

---

[3] The doctrine of promissory estoppel under both New York and Pennsylvania law is similar and the two states' laws
do not conflict. *See Toll v. Tannenbaum*, 982 F. Supp. 2d 541, 561 (E.D. Pa. 2013), *aff'd on other grounds*, 596 F.
App'x 108 (3d Cir. 2014). "If two jurisdictions' laws are the same, then there is no conflict at all, and a choice of
law analysis is unnecessary." *Hammersmith v. TIG Ins. Co.*, 480 F.3d at 230. Therefore, no choice-of-law analysis
is required.

17

*Shearer*, 650 F. App'x 115, 117 (3d Cir. 2016) (citing *Titan Indem. Co. v. Cameron*, 2002 WL 242346, at \*2 (E.D. Pa. Feb. 19, 2002)). "Accordingly, an insured must show '(1) an inducement, whether by act, representation, or silence when one ought to speak, that causes one to believe the existence of certain facts; (2) justifiable reliance on that inducement; and (3) prejudice to the one who relies if the inducer is permitted to deny the existence of such facts.'" *Id.*

Similarly, in the insurance context under New York law, "estoppel requires a showing of prejudice to the insured." *Cont'l Cas. Co. v. Marshall Granger & Co., LLP*, 6 F. Supp. 3d 380, 394 n.16 (S.D.N.Y. 2014), *aff'd sub nom. Cont'l Cas. Co. v. Boughton*, 695 F. App'x 596 (2d Cir. 2017). To prove prejudice, a plaintiff "bears the burden of showing that it suffered economic tangible injury." *Unigard Sec. Ins. Co. v. N. River Ins. Co.*, 4 F.3d 1049, 1069 (2d Cir. 1993). Furthermore, a plaintiff must have actual proof that the results of the litigation would have been different to prove prejudice. *See id.* at 1068-69 (refusing to follow cases "that hold that the loss of the right to associate itself 'constitute[s] prejudice without any actual proof that the results of the litigation would have been different.'") (internal citations omitted). An insurer's bargained for loss of association with a lawsuit is not enough on its own to show prejudice by the claiming party. *See id.*

"[W]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given

to it other than that expressed. Where the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence." *Lesko v. Frankford Hosp.-Bucks Cty.*, 609 Pa. 115, 123, 15 A.3d 337, 342 (2011) (quoting *Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659, 661 (1982)). Admiral's promissory estoppel claim fails because Liberty did not make a promise to expand coverage outside what was stated in the policy. Liberty's umbrella policy, read in conjunction with the Agreement for Engineering Services, unambiguously states that Girard Estate is an additional insured with a coverage limit of $1,000,000. The limitations stated on the declaration page of the policy are an overview of coverage and do not detail every limitation contained in the policy. The contracts must be read as a whole, including the endorsement lowering the amount of coverage available to additional insureds to $1,000,000. *See id.* Girard Estate's knowledge of its insurance coverage situation was not based on a promise by Liberty but a misunderstanding and misreading of its insurance policies.

Admiral claims that Girard Estate relied on the declaration page of the policy, not the Certificate of Insurance prepared by Wells Fargo.[4] Yet, Girard Estate's reliance on the policy limits stated on the declaration page of the policy is unreasonable because a declaration page is a brief, informational summary of the policy. It does not provide all relevant details of the policy. An insured must fully

---

[4] Liberty insists Girard Estate must have relied on the Certificate of Insurance. ECF No. 51 at 11:20-24.

understand the insurance policies so that it can act with full and complete information. Girard Estates should have relied on the entire policy instead of just the declaration page at the beginning of the policy. If an insured could exclusively rely upon the declaration page to make insurance decisions, the details contained within the rest of the policy would be irrelevant.

Admiral's suggestion that if Girard Estate understood that it was only covered for $1,000,000, Girard Estate would have alerted Admiral of the excess risk, Admiral would have monitored the *May* lawsuit, and Admiral ultimately would have gotten a better settlement result is purely speculative. In fact, Admiral's conduct after it learned of its potential exposure with regards to the *May* lawsuit suggests that nothing would have changed: Admiral did not set a reserve for the claim or attend the mediation after it knew that the claim could possibility exceed Liberty policies' limits.

Admiral tendered the defense of the lawsuit to Liberty and, under these circumstances, must accept the results. Admiral has not shown that the results of the litigation would have been different had it monitored the *May* lawsuit more closely. Admiral has failed to show any proof of tangible economic loss or that Girard Estate was prejudiced by Liberty's defense of the *May* lawsuit. Admiral can only offer speculation that it may have gotten a better result, which does not

rise to the level of prejudice. The Court therefore grants Defendants' Motion for Summary Judgment.

## V.    CONCLUSION

For the reasons set forth above, this Court grants Liberty's Motion for Summary Judgment (ECF No. 44). An appropriate order will follow.


DATE: __8·19-19__                              __CHAD F. KENNEY, JUDGE__